AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

21-6274-SNOW

| | | |
|---|---|---|
| United States of America | ) | **SEALED** |
| v. | ) | |
| | ) | Case No. 1:21-mj-0339 |
| Maria Caceres | ) | |
| | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* Maria Caceres,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Count 1: Wire Fraud, in violation of 18 U.S.C. § 1343.

Date: 4/14/2021

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

City and state: Indianapolis, IN

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____. |
| Date: _____   _____ Arresting officer's signature |
|    _____ Printed name and title |

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

| United States of America | ) | |
|---|---|---|
| v. | ) | **SEALED** |
| | ) | Case No. |
| Maria Caceres | ) | 1:21-mj-0339 |
| | ) | |
| | ) | |
| *Defendant.* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

From on or about the date(s) of 08/24/2010 until on or about 09/25/2016 in the county of Hamilton in the Southern District of Indiana, the Defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

s/ Michele Denise Vicini
*Complainant's signature*

Michele Denise Vicini, SA/FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by telephonic communication *(reliable electronic means)*

Date: 4/14/2021

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

City and state: Indianapolis, IN

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michele Denise Vicini, having been duly sworn, hereby depose and state:

### I. VIOLATIONS OF FEDERAL LAW

1. This affidavit is being submitted to establish probable cause that Maria Caceres has violated Title 18, United States Code, Section 1343, wire fraud.

### II. AFFIANT

2. I am a Special Agent of the Federal Bureau of Investigation ("FBI") currently assigned to the Indianapolis Office. I am presently assigned to a white collar crime squad that has investigative responsibility for fraud and other white collar criminal matters and have received training in the area of white collar crime. I have been a Special Agent with the FBI for five years and six months. As an FBI Agent, I have participated in numerous arrests, investigations, and searches, and have investigated federal criminal violations of Title 18 crimes.

3. Your affiant has participated in the investigation of the offenses described within this affidavit. The statements contained in this affidavit are based on my experience and training as a Special Agent of the FBI, information provided to me from witnesses, and documents reviewed during the course of this investigation. Since this affidavit is being submitted for the purpose of securing a warrant for the arrest of Maria Caceres, your Affiant has not included each and every fact that has been revealed through the course of this investigation. Your Affiant has set forth only the facts that are believed to be necessary to establish the required foundation for the issuance of the requested Warrant.

4. The purpose of this affidavit is to set forth probable cause for a criminal complaint charging Maria Caceres with a violation of Title 18, United States Code, Section 1343, Wire Fraud.

1

### III. SUMMARY OF AFFIDAVIT

5. I submit that the facts set forth in this affidavit establish that there is probable cause to believe Maria Caceres (CACERES) knowingly violated Title 18, United States Code, Section 1343, in that, as detailed below, beginning on or about August 24, 2010 through on or about September 25, 2016, CACERES caused thirty-three (33) wire transfers to be sent via interstate wire in furtherance of the scheme and artifice described below.

### IV. REQUIREMENTS OF FEDERAL LAW

6. Title 18, United States Code, Section 1343 makes it illegal to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and then to transmit or cause to be transmitted by means of wire communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purposes of executing such scheme or artifice.

### V. NATURE OF THE SCHEME

7. By way of background, Seven Corners, Inc. (SC), is a privately-held international travel insurance and specialty benefit management company headquartered at 303 Congressional Boulevard, Carmel, Indiana, which is in the Southern District of Indiana. The coverage provided by SC is underwritten by insurance carriers. When SC pays a claim, it comes from a fiduciary account funded by these carriers. SC's travel insurance products can be purchased by travelers directly from SC, but it also administers travel insurance programs offered or provided by businesses, associations, and governments to their employees, members, and others.

8. The SC Assist Department is part of its Customer Service Department. The Assist Department processes claims and helps members in need of emergency healthcare. In short, the

Assist Department facilitates immediate payment to ensure prompt delivery of emergency healthcare services. One method in which they do this is through Guarantees of Payment (GOP).

9.   SC hired CACERES in 1998, and she eventually became Director of the Assist Department. CACERES held that position until January 2015, when she became a Business Development Director.

10.   Beginning on or about August 24, 2010 through on or about September 25, 2016, CACERES caused to be submitted thirty-three (33) fraudulent claims to SC for processing and payment. Of the thirty-three (33) claims, three (3) were denied due to suspicion of fraud. Thirty (30) claims were paid, totaling $615,153.79. Twenty-nine (29) of those claims were paid to accounts belonging to R.C., an individual with whom CACERES is known to have a personal relationship.

### VI.   FACTS ESTABLISHING PROBABLE CAUSE

#### A. SC Investigation of Fraudulent Claims

11.   Early in December 2016, the SC Director of Customer Service notified the SC Chief Operating Officer of concerns over claims from Centro Medico El Valle (CMV). CMV is a hospital in Venezuela which purportedly provided medical services to thirty-three (33) of SC's policy holders. A review of CMV claims revealed that some of the claims' documents submitted to SC were not authentic. It was also revealed that these claims were funneled through CACERES.

12.   In her role as Director of Assist, CACERES helped develop a network of quality healthcare providers and hospitals throughout the world. She traveled to meet many of these providers. Because of this, CACERES told her subordinates that she had visited CMV and met the CMV contact person, R.C. CACERES vouched for both CMV and R.C. in pressuring her

subordinates to promptly process CMV claims. CACERES, in her position as Director of Assist, was required to sign off on all GOP's.

13. From 2010 to December 2016, CACERES and R.C. communicated via email on a regular basis. The subject of these communications was often about claims for payment for members purportedly treated at CMV. In these emails, R.C. plays the part of the CMV representative seeking payment for CMV services. Based on the investigation, R.C. does not have, and never has had, a role with CMV. Claims from CMV were usually emailed to CACERES. CACERES would then forward the email to the Assist Department and direct expedited payment. The purported email address for CMV that was used in making the fraudulent claims to SC was centromedicoelvalle@yahoo.com.

14. During the course of SC's investigation into the fraudulent claims, emails linking CACERES to R.C. on a personal level were also discovered. There were numerous communications between CACERES and R.C. discussing travel, meeting each other, money, and other non-business-related matters. The communications contained terms of endearment, consistent with a close personal relationship, between CACERES and R.C.

15. In approximately June 2018, SC referred the investigation into CACERES to the FBI Indianapolis Field Office.

B. **Communications with mariacaceres65@hotmail.com**[1]

16. **Email from R.C.** On June 5, 2012, an email from rafaelechc@gmail.com was sent to mariacaceres65@gmail.com, Maria.Caceres@sevencorners.com, CACERES' work email address at SC, and jlcaceres@yahoo.com. The email stated, "we will use this," then provided a

---

[1] Where email messages are quoted in this affidavit, they are a translation from Spanish to English.

4

bank account number for a bank located in Miami, FL. CACERES then responded from her work email address with, "Who moves it? Remember that immediately after the money is deposited we need to pay the others...." R.C. then responded, "Quiet...all square. Full confidence." Google records indicate the email address rafaelech@gmail.com was created on November 21, 2005 by R.C.

17. Based upon my training and experience, this conversation is consistent with R.C. and CACERES discussing the movement of money once payment has been received from the fraudulent claims submitted to SC.

18. **Email containing claims documentation.** On June 5, 2015, an email was sent from mariacaceres65@hotmail.com to Maria.Caceres@sevencorners.com. The email contained documents attached that were titled the following:

- Guillermo Hernan Garcia Centro Medico El Valle Estimado.docx
- Guillermo Hernan Garcia Resultados Laboratorio.docx
- Guillermo Hernan Garcia Medical Report.docx

19. The first two documents that were titled "Guillermo Hernan Garcia Centro Medico El Valle Estimado.docx" and "Guillermo Hernan Garcia Resultados.Laboratorio.docx" referenced a patient name of "John Mark Williams" and a date of service for "March 8, 2014." A claim for John Mark Williams in the amount of $19,520.80 was paid from SC on April 1, 2014. A claim for Guillermo Hernan Nicolas Garcia Suarez in the amount of $23,961.60 was paid from SC on June 22, 2015.

20. Based upon my training and experience, the above behavior is consistent with CACERES sending documents from her personal email account to her work email account for the purpose of altering the documents to submit for a fraudulent claim.

5

### C. Examples of Fraudulent Claims

### Claims #13692700 and #13698130

21. On November 25, 2015, an insurance policy was purchased for "Marcelo Gonzalez Larrazabal," a supposed resident of Portugal, from SC, using Financial Center First Credit Union (FCFCU) debit card ending in number 3892. Financial records indicate that R.C. and J.C, husband of CACERES, are signers for the FCFCU account linked to debit card ending in number 3892. Financial records for this same account indicate that on November 25, 2015, a withdrawal for $57.50 posted from WCT Travel Insurance.[2]

22. On December 6, 2015, claim #13692700 was initiated with an email from centromedicoelvalle@yahoo.com to assist@sevencorners.com, the general email address for the Assist Team at SC, and to CACERES. The email stated that the insured was admitted to the hospital on December 4, 2015 due to several injuries sustained during a robbery. Included in the email were the medical reports and estimated expenses needed for the Assist Team to process the claim. Also included was a news article of the incident. Oath Holdings records indicate that the email address centromedicoelvalle@yahoo.com was registered on October 13, 2011 from an IP address located in Indiana. Google records indicate that email address mariacaceres65@gmail.com was registered on October 18, 2010 from the same IP address that centromedicoelvalle@yahoo.com was created from.

---

[2] Based upon my understanding of their relationship, SC administered the policy, and WCT Travel Insurance underwrote the policy.

23. On December 7, 2015, CACERES forwarded the email sent from centromedicoelvalle@yahoo.com to W.S., an SC employee who was part of the Assist Team, and asked if he had received it. She went on to say how embarrassed she was that something like this had happened in her country.

24. On December 13, 2015, Claim #13698130 was initiated with an email from centromedicoelvalle@yahoo.com to the Assist Team and to CACERES. The email stated that the insured was being readmitted to the hospital due to complications from his kidney surgery.

25. On December 22, 2015, W.S. received an email from centromedicoelvalle@yahoo.com asking if the two claims could be processed together to avoid bank fees.

26. On December 29, 2015, CACERES sent an email to W.S. asking if there was any news regarding the payment of the claims.

27. The email address for "Marcelo Gonzalez Larrazabal" that was listed on the Proof of Loss form submitted to SC as part of the claims package is mglarrazabal@gmail.com. Google records indicate the recovery email address for mglarrazabal@gmail.com is mariacaceres65@gmail.com. Google records indicate mariacaceres65@gmail.com is registered to CACERES.

28. On December 30, 2015, a wire transfer to Banesco S.A., account ending 6446 was initiated for payment of these claims totaling $75,391.70. The recipient of the wire was R.C. at a Banesco branch in Panama.

29. On January 8, 2016, a wire transfer totaling $75,005.00 was paid from R.C.'s Banesco S.A. account ending in 6446 into a JP Morgan Chase (JPMC) account ending in 9492. CACERES and G.S., CACERES' mother, are both signers on the JPMC account ending in 9492.

### Claim #13715528

30. On January 12, 2016, a Vanilla Visa gift card ending in number 9565 was purchased from CVS, located at 13090 Pettigru Drive, Carmel, IN for $100.00.

31. On January 13, 2016, an insurance policy was purchased from SC for "Andreina Alicia Golding Lozada," a supposed resident of Panama. The cost of the policy was $94.23, and it was purchased using the Vanilla Visa gift card ending in number 9565.

32. On January 13, 2016, a transaction of $94.23 was paid from the Vanilla Visa gift card ending in number 9565 to Tramont Insurance (transaction posted on January 14, 2016). According to records provided by SC, the policy purchased for "Andreina Alicia Golding Lozada" was paid to Tramont Insurance on January 14, 2016.

33. On February 2, 2016, claim #13715528 was initiated with an email from centromedicoelvalle@yahoo.com to W.S. and to CACERES, stating that "Paula Andreina Gama Golding," a three year old girl, was vacationing with her mother, "Andreina Alicia Golding Lozada," and was admitted to CMV on January 30, 2016 due to peritonitis.

34. The email address for "Andreina Alicia Golding Lozada" that is listed on the Proof of Loss form submitted to SC as part of the claims package is pablogama1977@yahoo.com. Oath Holdings records indicate that the alternate telephone number listed with the subscriber information for pablogama1977@yahoo.com is 317-514-4456, a telephone number associated with CACERES.

35. On February 16, 2016, a wire transfer was initiated for payment of this claim totaling $36,000. The wire was sent to R.C., Banesco S.A. in Panama, account ending in 6446.

8

### Claim #13764525

36.     On May 31, 2016, an insurance policy was purchased for "Nela Garcia de Magalhaes" from SC. Purchase information includes an address for the insured, which is listed as an address in Lisboa, Portugal. The cost of the policy was $99.95, and the policy was purchased using card ending in number 3878, which was a Vanilla Visa gift card purchased on May 31, 2016 in the amount of $100.00 at the CVS located at 13090 Pettigru Drive, Carmel, IN. According to JPMC records for account ending in 9492, belonging to CACERES and G.S., an ATM withdrawal of $200.00 posted on June 2, 2016. The ATM was located at 13085 Pettigru Drive., Carmel, IN, an address across the street from the CVS in which the Vanilla gift card was purchased.

37.     On May 31, 2016, a transaction of $99.95 was paid from the Vanilla Visa gift card ending in 3878 to WCT Travel Insurance (transaction posted on June 2, 2016).

38.     On June 20, 2016, claim #13764525 was initiated with an email from centromedicoelvalle@yahoo.com to W.S., stating that SC's insured, "Nela Garcia de Magalhaes," had been admitted into their hospital due to dengue fever.

39.     On June 29, 2016, CACERES received an email from lucianoynelamagalhaes@gmail.com regarding payment for the claim. The email was purportedly from the insured's husband, "Luciano." CACERES then forwarded the email to W.S. and asked if the claim was being processed. Google records indicate that the email address lucianoynelamagalhaes@gmail.com was created on June 1, 2016 from an IP address located in Carmel, IN. Google records indicate the recovery email address for lucianoynelamagalhaes@gmail.com is mariacaceres65@gmail.com.

40. The passport for "Nela Garcia de Magalhaes" that was included in the documentation submitted to SC for the claim can also be found when doing a Google image search for Portugal passports. The photo and date of birth are identical on the passport found via Google and the one submitted to SC as part of the claim package. However, other information on the submitted passport was altered, to include the spelling of the name and the passport number.

41. On July 6, 2016, a wire transfer was initiated for payment of this claim totaling $25,183.00. The wire was sent to R.C., Banesco S.A., in Panama, account ending in 6446.

### Claim #13829227

42. On September 25, 2016, Claim #13829227 was initiated with an email from rafaelchc@outlook.com, an email address used by R.C., to CACERES and assit@sevencorners.com, the incorrect email address for the Assist Team. The email states that he is attaching documentation for insured "Ling Chen" who was treated at their facility, CMV. In the email, R.C. says he is the "General Director" of CMV and will be handling all future cases with SC. He signs the email as "Dr. Rafael Chacon Cabarales."

43. On September 25, 2016, CACERES forwarded R.C.'s email to A.R., another SC employee on the Assist Team. CACERES said, "This was sent yesterday but they used the wrong email address for Assist. Please handle immediately as this insured will be released tomorrow. See me if you have questions."

44. **Centricity Investigation.** SC hired an outside firm, Centricity, to investigate Claim #13829227. Below are some of their findings regarding this claim:

    a. The incident report submitted to SC claims that the insured traveler, "Liang Chen," was attacked physically and robbed by several unknown individuals at the construction site of a Christian church in the vicinity of "El Cuji" road, San Mateo,

Margarita Island, Venezuela. The insured was allegedly transported to the CMV emergency room. Several documents and reports were produced and forwarded to file an insurance claim under the name "Liang Chen." The documents purport the insured was treated by Dr. M.G. and that he sustained two penetrating traumas in the abdominal area and several others in the facial area, causing a nose fracture.

 b. On December 14, 2016, a Centricity agent visited the CMV medical center and interviewed Dr. M.G. The agent produced documents provided by the alleged insured.

  i. Dr. M.G. stated that he had never treated the insured.

  ii. The doctor further stated he did not sign the produced medical report and refuted the signature as being his, also adding that he does not treat facial injuries.

  iii. The doctor also explained that his medical stamp had gone missing about a month prior and provided a Cuerpo de Investigaciones Cientificas, Penales y Criminalisticas (CICPC) police report number for the lost stamp.

 c. The Centricity agent then interviewed the Operations Manager (OM) of CMV.

  i. The OM confirmed that the CMV administration does not have any record on file for a patient with the name, passport number, date, or sustained injuries described in the provided documents for the insured.

  ii. The OM also stated the invoice and other documents displayed a CMV logo that was fake and does not comply with their standards.

  iii. Furthermore, the OM confirmed that CMV does not hold bank accounts with Banesco Panama.

    d.    After speaking with locals, searching the internet, and driving by described locations in the provided documents, the Centricity agents were unable to locate the alleged location of the claimed attack, the IMAX X-Ray center in Margarita Island, or the address shown in the medical report.

    e.    After a Facebook search and internet data base searches, the Centricity agent held a Facebook chat and an email exchange with the owner of IMAX Digital Radiology Diagnostic Center.

        i.    As a result, Centricity agents were informed that the radiology report is fabricated and includes medical terminology not used in Venezuela.

        ii.    The agents were advised there were no IMAX Radiology offices on Margarita Island, and

        iii.    The radiology center did not have any patient files with the insured's name or description of injuries

    f.    The Centricity agent then visited the CICPC Headquarters in Porlamar, Margarita Island and conducted a personal interview with Chief Detective C.G.

        i.    The passport number provided for the insured did not have any hits in the system, including being listed as a victim of a crime or having filed a criminal complaint in Venezuela.

        ii.    Furthermore, there were no migratory entries or exits to or from the national territory of Venezuela. As such, it was impossible to corroborate the criminal and medical claims outlined in the documents provided to SC, the identity of the alleged victim, and his presence in Venezuela.

    iii.  Dr. M.G. did appear at the CICPC headquarters on November 11, 2016 and reported the disappearance of his Venezuelan National Identification Card and his medical stamp near a food stand in Margarita Island.

45. This claim payment was stopped after suspicion of being fraudulent.

### D. Evidence Obtained from a Search Warrant of mariacaceres65@gmail.com

46. Several photographs, dating back to 2011, were found of CACERES and R.C., to include family vacations and CACERES' son's graduation.

47. According to the Google search activity, a search for "periodicas de margarita" (newspapers of margarita) was conducted on December 6, 2015. On this same day, the website for "El Sol de Margarita" was visited. The first claim submitted for "Marcelo Gonzalez Larrazabal" was initiated on December 6, 2015 and included a newspaper article from "El Sol de Margarita," a Venezuelan newspaper from Margarita Island.

48. Based on my training and experience, I believe CACERES was searching for a legitimate newspaper article from a legitimate newspaper from Margarita Island to include in the fraudulent claim submitted for "Marcelo Gonzalez Larrazabal" to make the claim appear legitimate.

49. According to the Google search activity, a search for "sepsis generalizada" (generalized sepsis) was conducted on December 6, 2015. On this same day, searches for "sepsis generalizada debido a infeccion de orina" (generalized sepsis due to urine infection) and for "reporte de sepsis generalizada debido a infeccion de orina" (report of generalized sepsis due to urine infection) were also conducted. The second claim submitted for "Marcelo Gonzalez Larrazabal" had a date of service for December 21, 2015. The diagnosis listed on the claim was "septicemia," also known as sepsis.

50. Based on my training and experience, I believe CACERES was searching for a medical report for sepsis to include in the second fraudulent claim submitted for "Marcelo Gonzalez Larrazabal."

51. A photograph dated December 19, 2015 of a handwritten note containing information from the claim submitted for "Marcelo Gonzalez Larrazabal," to include his name, date of birth, passport number, address, dates of travel, policy number, telephone number, and email address, was found in Google photos.

52. According to the Google search activity, a search for "addresses in panama" was conducted on January 13, 2016. On January 13, 2016, an insurance policy was purchased for "Andreina Alicia Golding Lozada," a supposed resident of Panama, from Seven Corners, Inc.

53. Based on my training and experience, I believe CACERES was searching for an address in Panama to include with the policy she purchased for "Andreina Alicia Golding."

54. According to the Google search activity, a search for "certificado de matrimonio de panama" (Panama marriage certificate) was conducted on January 31, 2016. On February 2, 2016, the claim for "Paula Andreina Gama Golding," a three year old from Panama who was vacationing with her mother, was initiated. A marriage certificate from Panama was included in this claim as supporting documentation.

55. Based on my training and experience, I believe CACERES was searching for a marriage certificate from Panama to include with the documentation for the fraudulent claim submitted for "Paula Andreina Gama Golding."

56. According to the Google search activity, a search for "firmas en espanol" (signatures in Spanish) was conducted on February 2, 2016. On this same day, a search for "hotel Hilton margarita island" was conducted. Also on this day, a search for "pediatras en ciudad de

panama" (pediatricians in the city of Panama) was conducted, followed by a visit to the website for "Francisco Bravo Centro Medico Paitilla." The claim for "Paula Andreina Gama Golding" lists the "Hotel Hilton Isla de Margarita" as the current residence address. This same claim lists "Francisco Bravo Centro Medico Paitilla" as the primary care physician for "Paula Andreian Gama Golding."

57. Based on my training and experience, I believe CACERES was searching for information to include in the documentation for the fraudulent claim submitted for "Paula Andreina Gama Golding."

58. According to the Google search activity, a search for "insurance frauds punishment" was conducted on December 18, 2016. On December 17, 2016, CACERES was terminated due to her fraudulent activity.

59. According to the Google search activity, a search for "conspiracy to commit fraud suits" was conducted on February 25, 2017.

60. According to the Google search activity, a search for "who is eligible for house arrest Indiana" was conducted on March 9, 2017.

61. According to the Google search activity, a search for "maximum sentencing in fraud cases" was conducted on March 16, 2017.

62. According to the Google search activity, searches for "employee dishonesty claim cases," "employee theft prosecution," "subrogation from employee after theft," and "employee theft consequences" were conducted on April 7, 2017.

63. According to the Google search activity, a search for "Wesley Smith arrest" was conducted on September 17, 2019. Wesley Smith was indicted for Conspiracy to Commit Wire Fraud against SC, Cause No. 1:19-cr-0272-JRS-TAB, on August 14, 2019.

64. According to the Google search activity, searches for "Lisa Raynes embezzled funds," "L&B Tape," "Hamilton County Inmates Search," and "Lisa Raines Anderson," were conducted on January 20, 2020. Lisa Raines was indicted for Wire Fraud against SC, Cause No. 1:20-cr-0007-JPH-DML, on January 7, 2020.

65. According to the Google search activity, visits to https://pacer.uscourts.gov and https://public.courts.in.gov/mycase occurred multiple times between December 20, 2019 and January 1, 2021.

## CONCLUSION

66. Therefore, based on the facts and for the reasons set forth above, your Affiant submits that there is probable cause to believe that violations of Title 18, United States Code, Section 1343 have been committed by Maria Caceres.

67. The Defendant is unaware that she is a target of this investigation. Therefore, it is requested that this Complaint Affidavit and Warrant be sealed.

s/ Michele Denise Vicini
Michele Denise Vicini, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by telephonic communication (*reliable electronic means*).

4/14/2021

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana